IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARCEL COBB,

*Plaintiff*,

v.

Civil Action No. ELH-14-02090

TOWSON UNIVERSITY,

*Defendant*.

**MEMORANDUM OPINION**

Plaintiff, Darcel Cobb, a self-represented former employee of defendant, Towson University ("Towson"), filed suit against Towson on June 27, 2014, alleging that she was unlawfully terminated on June 29, 2010.  ECF 1 at 2.[1]  Cobb, who is African American (ECF 1 at 2 ¶ 6), alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*.  *Id*. at 5.  In particular, on the form Complaint (ECF 1), plaintiff alleges that she was "Retaliated for filing EEOC charge," *id*. at 2 ¶ 4, and that defendant's conduct was discriminatory because it was based on race.  *Id*. at 2 ¶ 5.

In a typewritten, one-page attachment to the form Complaint, plaintiff asserts that she was employed by Towson as a "Library Technician for many years, and was treated less favorably than a non-African American coworker."  *Id*. at 5 ¶ 2.  She also claims that she was reprimanded frequently and "accused of poor job performance despite . . . overwhelming evidence to rebuttal [sic] this false claim."  *Id*.  Yet, her coworker's poor job performance was "ignored."  *Id*.  In addition, plaintiff asserts that beginning January 3, 2006, and continuing through her termination in June 2010, she suffered "harassment."  ECF 1 at 3 ¶ 8; *id*. at 5 ¶ 1.

---

[1] As discussed, *infra*, in other submissions plaintiff contends that she was terminated on October 31, 2010.  *See, e.g.*, ECF 17, Ex. 2 (EEOC Charge of 11/10/10).

Plaintiff seeks, *inter alia*, back pay, monetary damages in the amount of $400,000, punitive damages, and injunctive relief. *Id.* at 3-4.

Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, a pre-discovery motion for summary judgment, pursuant to Rules 12(d) and 56. ECF 15 ("Motion"). The Motion is supported by a legal memorandum, ECF 15-1 ("Memo"), and four exhibits. I will refer to the Motion and the Memo collectively as the "Motion." Plaintiff has responded in opposition to the Motion. *See* ECF 17 ("Opposition"). Her Opposition is supported by fifty exhibits, most of which were filed in paper format only. *See* ECF 17 (docket text noting that Exhibits 1-50 were filed in paper format only). However, six of the exhibits were refiled electronically. *See* ECF 21-1 through ECF 21-6 (electronic copies of Exhibits 12, 28, 30, 21, 44, 47). Thereafter, Towson filed a reply. ECF 23 ("Reply").

The Motion has been fully briefed and no hearing is necessary to resolve the issues. *See* Local Rule 105.6. For the reasons set forth below, I will grant the Motion, but I will also grant plaintiff leave to amend her Complaint.[2]

## I.   Factual Summary[3]

In July 1989, Towson hired Cobb to work as a Library Technician. Ex. 2 to plaintiff's Opposition (Charge of Discrimination filed Nov. 17, 2010). According to the Complaint, "[h]arassment began January 3, 2006[,] the next day after [Cobb's] African American supervisor resigned … ." ECF 1 at 5 ¶ 1.

---

[2] Because plaintiff is self-represented, her Complaint has been liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] In this section, I rely on the Complaint and on two exhibits submitted by plaintiff with her Opposition. As discussed, *infra*, these exhibits may be properly considered in deciding a motion under Fed. R. Civ. P. 12(b)(6) because they are integral to the Complaint.

Cobb alleges that she "was accused of over spending for library materials", *id*. at 2 ¶ 6, and that she was "[r]etaliated against for filing EEOC charge." ECF 1 at 2 ¶ 4. With respect to plaintiff's claim that Towson discriminated against her based on race, Cobb alleges that she was treated differently than her "non-African American coworker Emiko Ortega," another Library Technician. ECF 1 at 5 ¶ 2. She states, *id*.:[4]

> 2) I was the only African American in my department, one of three employees. I was employed 16 years in the department, 21 years in the department. My non-African American coworker Emiko Ortega and I were both library technicians. We were treated different, she was treated better. I was daily reprimanded and accused of poor job performance despite my overwhelming evidence to rebuttal this false claim. Ortega poor job performance and work for months and years was ignored. I provided documentation of this as well as she daily cancelling request for library materials available and on the shelves. She filed a false report of me verbally assaulting her. Her student employee the only eye witness provided an affidavit to her false statement in support of my account. Ortega's statement was accepted with no witnesses and I was reprimanded. Complaints about her poor job performance were ignored.

Additionally, Cobb alleges, *id*. ¶ 3:

> 3) My outstanding job performance written acknowledgements of my outstanding performance were ignored. My supervisor Sharon Mollock of eleven yrs. statements on my behalf were dismissed. She resigned Jan 2, 2006. I received below overall performance rating while she received above overall rating. I was daily harassed while she [was] praised despite evidence of her poor performance. Race was obviously the major factor for the daily mistreatment.

According to Cobb, the events in issue occurred between January 3, 2006, and June 29, 2010. ECF 1 at 3 ¶ 8. The gist of the allegations seems to be that after Mollock resigned, Cobb was treated differently from Ortega. As noted, Cobb states that she "was the only African American in [her] department of 3." ECF 1 at 2 ¶ 6.

Cobb alleges she filed a Charge of Discrimination with the EEOC on November 10, 2009 (ECF 1 at 3 ¶ 9), and that she received a right to sue letter on March 27, 2014. *Id*. ¶ 10. Cobb

---

[4] Cobb's narrative contains numerous grammatical errors or seeming omissions. In order to avoid cluttering the text, I have not identified them.

filed a copy of the alleged Charge of Discrimination ("EEOC Charge") and the right to sue

letter ("RTS Letter") as exhibits to her Opposition.  *See* Ex. 2 (EEOC Charge); Ex. 3 (RTS

Letter, dated Mar. 27, 2014).  The EEOC Charge itself shows that it was filed on November 10,

2010, rather than November 10, 2009.  *See* Ex. 2; *see also* Opposition, ECF 17 at 2-3

(indicating Ex. 2 is the EEOC Charge referenced in the Complaint); Ex. 3 (RTS Letter matching

EEOC Charge No. in Ex. 2).

In the EEOC Charge, Cobb claimed that Towson discriminated against her based on race

and in retaliation for engaging in protected activity.  Ex. 2.  The earliest date of discrimination is

listed as June 25, 2010, and the latest incident was October 31, 2010.  *Id*.  The "particulars" of

the charge are as follows:

    I.    I was hired by the above named employer on July 5, 1989 as a Library
Technician.  I have filed multiple charges of discrimination against my
employer.  On June 25, 2010, I was placed on paid administrative leave.  In
October 2010, I received notice of my employer's intent to discharge me.

    II.    My employer stated I was placed on administrative leave and discharged
because of alleged performance problems.  A similarly situated non-Black,
non-protesting employee (Emiko Ortega) has worse performance than I, but
no adverse employment action was taken against her.

    III.    I believe I was discriminated against with respect to administrative leave and
discharge because of my race (Black) and in retaliation for engaging in
protected activity in violation of Title VII of the Civil Rights Act of 1964, as
amended.

As noted, Cobb filed suit in this Court on June 27, 2014.  ECF 1.  With its Motion,

Towson submitted Exhibit A, which is a Charge of Discrimination submitted by Cobb to the

EEOC and the Maryland Commission on Human Relations ("MCHR") in February 2008.  ECF

15-2.  The charge alleged that Cobb was not selected for a promotion in December 2007 because

of her race.  *Id*. at 2.  Defense Exhibit B is titled "Pre-Determination Settlement Agreement."

ECF 15-3 at 2.  It relates to the February 2008 Charge of Discrimination included as defendant's

Exhibit A.  *See* ECF 15-3 at 3, 6.  Towson's Exhibit C is a Charge of Discrimination submitted

by Cobb to the EEOC and the MCHR in May 2008.  ECF 15-4 at 2.  The charge alleged that

Cobb received a negative performance evaluation in retaliation for filing the Charge of

Discrimination included as defendant's Exhibit A.  *Id*.  Defendant's Exhibit D is a right to sue

letter related to the charge included as Exhibit C to defendant's Motion, issued to Cobb by the

EEOC on December 8, 2009.  ECF 15-5 at 2.

As stated, plaintiff submitted fifty exhibits with her Opposition.  The exhibits include a

wide variety of documents related to Cobb's employment, including, *inter alia*, her termination,

evaluations, administrative appeal, evidence of assigned tasks successfully completed, letters of

recommendation, and applications for unemployment benefits.

## II.  Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.

*McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted).  To survive a Rule

12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P.

8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is

entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the

claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-

56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements

of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v.

Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show

that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss*., ____ U.S. ____,

135 S. Ct. 346, 347 (2014); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, \_\_\_\_ U.S. \_\_\_\_, 132 S. Ct. 402 (2011).  Nonetheless, the complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'"  *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading.  Ordinarily, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein."  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  However, a court may properly consider documents attached or incorporated into the complaint, as well as documents attached to the defendant's motion, "'so long as they are integral to the complaint and authentic.'"  *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Alternatively, where a party submits matters outside the pleadings in connection with a motion to dismiss, a court may consider those matters if it treats the motion "as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  But, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.'"  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an

obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998); *see Gay*, 761 F.2d at 177 ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment.").

In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  5C Wright & Miller, FED. PRAC. & PRO. § 1366 (3d ed. 2004, 2011 Supp.).  The court's discretion, however, "should be exercised with great caution and attention to the parties' procedural rights."  *Id.*

In this case, it would not be appropriate to treat defendant's pre-discovery Motion as one for summary judgment; summary judgment is premature.  Moreover, I need not consider matters outside the pleadings to resolve the Motion.

However, in deciding a motion under Rule 12(b)(6), I may consider the Charge of Discrimination filed with the EEOC and the EEOC's final determination, because these documents give rise to a plaintiff's legal right to file a civil suit for employment discrimination and are necessarily relied on to satisfy statutory requirements.  *See*, *e.g.*, *Williams v. 1199 SEIU United Healthcare Workers E.*, WMN-12-00072, 2012 WL 2923164, at *1 n.1 (D. Md. July 17, 2012) ("In the employment discrimination context, a court may consider an EEOC charge and other EEOC documentation because such documents are integral to the complaint as plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme.") (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 617 n.3 (E.D. Va. 2011).

In particular, before filing suit in federal court under Title VII, a potential plaintiff must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1) (2006) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000).   This is known as the "exhaustion requirement," and it "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."   *Miles*, 429 F.3d at 491.

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."   *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005).   Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).   "Allowing [the EEOC] first crack at these cases respects Congress's intent … ."   *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Title VII's exhaustion requirement functions as a jurisdictional bar in federal court; a suit is subject to dismissal if a plaintiff has failed to comply with it.   In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process.   *See*, *e.g.*, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge,

those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation.").

For these reasons, the EEOC Charge and RTS Letter filed as Exhibits 2 and 3 to Cobb's Opposition, respectively, are integral to the Complaint. Therefore, I may consider them without converting the Motion to one for summary judgment.

## III. Discussion

Towson argues that Cobb's Complaint should be dismissed because "it fails to set forth any cognizable claim of retaliation" under Title VII; "fails to demonstrate that it is setting forth a new cause of action not resolved or waived by Plaintiff's prior charges of discrimination"; and fails "to state any claim which can stand on its own." ECF 15-1 at 2, 5-6. In "addition and/or in the alternative," Towson argues that the Court should grant partial summary judgment for Towson "on all claims arising from the allegations dating prior to the December 2009 right to sue letter that could have been raised in a suit following the EEOC's letter" because the limitations period to file suit on those claims expired years ago. *Id*. at 6.

In response to Towson's arguments, Cobb asserts, *inter alia*, ECF 17 at 2-3:

> My November 17, 2010 charge (See Maryland Commission on Human Relations Charge No. 531-2011-00319 attached as Exhibit 2) of retaliation and discrimination with [the] EEOC resulted in a Dismissal and Notice of Right on March 27, 2014 (See EEOC Dismissal and Notice of Rights attached as Exhibit

3).  On June 28, 2014, I filed a lawsuit with the Maryland United States District Court within the 90 day requirement.   The University's motion fails to acknowledge the November 17, 2010 charge.

Cobb also includes in her Opposition fifteen "specific allegations of conduct by the Defendant," ECF 17 at 3, which detail factual assertions not included in the Complaint.  *Id.* at 3-15.  Most of the allegations describe and refute Cobb's supposed performance problems, and/or describe and contrast the problems Cobb identified in her library colleagues' performance.  *Id.*

In its Reply, Towson reiterates its arguments that Cobb has failed to state any claim, and that, in any event, it is entitled to summary judgment with respect to any claims based on conduct that occurred prior to December 2009.  ECF 23 at 2-5.  Regarding Cobb's retaliation claim, Towson states, *id.* at 2:

> In opposing the University's motion, Plaintiff relies solely on the November 17, 2010 discrimination charge which preceded this lawsuit as the alleged protected activity underlying her retaliation claim.  (Doc. 17 at 2, Exhibits 2-3.)  That discrimination charge was filed *after* her June 29, 2010 termination, and therefore, cannot serve as the basis for a retaliation claim.

Further, Towson contends that, even if the additional allegations in Cobb's Opposition were part of her Complaint, and even if they were taken as true, Cobb would still fail to state a claim because "the alleged statements and opinions of her supervisors and co-workers do not in any way support her conclusion that the University discriminated against Plaintiff because of her race or in retaliation for protected activity."  *Id.* at 3-4.  "Rather," defendant continues, "they chronicle the story of Plaintiff's poor work history without at all implicating her race or any protected activity."  *Id.* at 4.

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  It also

prohibits employers from discriminating against an employee because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e-3(a); *Boyer-Liberto v. Fontainbleau Corp.*, ____ F.3d ____, 2015 WL 2116849, at *13 (4th Cir. May 7, 2015).

To survive a motion to dismiss, a complaint for employment discrimination under Title VII must include sufficient factual allegations to show plausibly that the plaintiff suffered an adverse employment action because of her race or protected enforcement activity. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) ("In her complaint, McCleary-Evans purported to state a claim under Title VII, which means that she was required to allege facts to satisfy the elements of a cause of action created by that statute—i.e., in this case, that the Highway Administration 'fail[ed] or refus[ed] to hire' her '*because of* [her] race ... [or] sex.'" 42 U.S.C. § 2000e–2(a)(1) (emphasis added).") (alterations in *McCleary-Evans*); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, … [f]actual allegations must be enough to raise a right to relief above the speculative level.") (citations omitted), *aff'd*, ___ U.S. ___, 132 S. Ct. 1327 (2012); *Twombly*, 550 U.S. at 570.

As the statutory language makes clear, Title VII prohibits only certain kinds of employment actions. *See* 42 U.S.C. §§ 2000–e2(a). First, "the existence of some adverse employment action is required." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

742, 761 (1998)).  Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice where they create a hostile work environment.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Hoyle*, 650 F.3d at 333-34.  But, "Title VII does not remedy everything that makes an employee unhappy."  *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003).

Moreover, Title VII prohibits only actions taken against an employee on an impermissible basis.  The intentional discrimination must be on the basis of plaintiff's "race, color, religion, sex, or national origin," *see* 42 U.S.C. §§ 2000-e2(a)(1), or because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision.  *See* 42 U.S.C. § 2000e-3(a).

In this case, plaintiff has sufficiently stated that she suffered an adverse employment action— namely, she alleges that she was terminated.  ECF 1 at 2 ¶ 4.  But, I agree with Towson that Cobb has failed to plead facts sufficient to show plausibly that Towson terminated her in retaliation for prior protected activity or because of her race.

With respect to the retaliation claim, the Complaint is essentially devoid of any factual allegations supporting it.  The Complaint does not explain, for example, which "EEOC charge" inspired Towson's retaliatory acts, or when the referenced EEOC charge was filed.  *See* ECF 1 at 2 ¶ 4.  Additional assertions by both sides in briefings on the Motion make clear that Cobb did file at least three Charges of Discrimination, including the one for retaliation underlying this action.  *See*, *e.g.*, ECF 15-2 (charge dated February 2008); ECF 15-4 (charge dated May 2008). But, the Complaint itself does not mention these charges, or any other Title VII enforcement activity.  *See Boyer-Liberto*, 2015 WL 2116849, at *13 ("Employees engage in protected oppositional activity, when, inter alia, they 'complain to their superiors about suspected

violations of Title VII'") (citation omitted).  Nor does it state whether the persons responsible for her termination were aware of her protected activity.

Moreover, to the extent that Cobb believes that the "specific allegations" newly included in her Opposition can save her claim, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Mylan Laboratories, Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).  Accordingly, in deciding Towson's Motion, I cannot consider the facts alleged in Cobb's Opposition, and I cannot find that the Complaint alleges facts sufficient to plausibly show that Towson terminated Cobb in retaliation for Cobb's protected activity.

The Complaint also fails to allege facts sufficient to show plausibly that Towson terminated Cobb because of her race.  In *McCleary-Evans*, *supra*, 780 F.3d at 588, the Fourth Circuit affirmed a district court's granting of a motion to dismiss a complaint with similarly thin allegations.  The Court reasoned, *id*. at 585-86 (citations omitted) (emphasis and alterations in original):

> In her complaint, McCleary-Evans purported to state a claim under Title VII … .  While she did allege that the Highway Administration failed to hire her, she did not allege facts sufficient to claim that the reason it failed to hire her was because of her race or sex. To be sure, she repeatedly alleged that the Highway Administration did not select her because of the relevant decisionmakers' bias against African American women.  … The allegation that the Highway Administration did not hire her because its decision makers were biased is simply too conclusory.  Only speculation can fill the gaps in her complaint — speculation as to why two "non-Black candidates" were selected to fill the positions instead of her.  While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not

alone support a *reasonable inference* that the decisionmakers were motivated by bias.

Here, Cobb alleges that Towson treated her non-African American colleague, Emiko Ortega, more favorably, by terminating Cobb for poor performance, but not disciplining Ortega for her poor performance. Cobb alleges two examples of her own supposed poor performance: she states that she "was accused of overspending for library materials", ECF 1 at 2, and that Ortega "filed a false report of [Cobb] verbally assaulting" Ortega. *Id.* at 5. Cobb further states that "Ortega poor job performance for months and years was ignored", and "[c]omplaints about [Ortega's] poor job performance were ignored." *Id.* But, she gives only one example of Ortega's poor performance, namely, that Ortega "daily cancel[ed] request for library materials available and on the shelves." *Id.* And, as stated, to the extent Cobb believes that the "specific allegations" newly included in her Opposition can save her claim, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Laboratories, Inc.*, 770 F. Supp. at 1068 (D. Md. 1991).

Accordingly, the Complaint fails to allege facts sufficient to plausibly show that Cobb was terminated because of her race. Although the facts alleged show that Cobb was treated differently from Ortega— Cobb was terminated, while Ortega was not— nothing shows whether Cobb and Ortega's performance on the job was similar. Cobb does not allege, for example, that Ortega was also accused of "verbally assaulting" a co-worker, or of "over spending on library materials," but that Ortega was not then fired. Taking the facts alleged as true and viewing them in the light most favorable to Cobb, it is conceivable that Towson terminated Cobb because of her race, but not plausible. It appears that Cobb was accused of more, and more serious, performance problems than Ortega. Thus, on the face of the Complaint, Cobb and Ortega were not similarly situated. And, there are no other relevant factual allegations. Accordingly, I cannot

infer that the real reason Towson terminated Cobb was because of her race.   As in *McCleary-Evans*, 780 F.3d at 586, "[o]nly speculation can fill the gaps in" Cobb's Complaint.

Finally, with respect to Towson's request that the Court grant summary judgment in its favor on all claims based on conduct that occurred before December 2008, I find that a decision on such claims would be premature because it is not clear to me that there are any in the Complaint.   In my view, the Complaint requests relief for only one alleged adverse employment action, *i.e.*, Cobb's termination in June 2010.   *See* ECF 1 at 2 ¶ 5.   In her Complaint, Cobb references only one of the many Charges of Discrimination she filed with the EEOC, which she submitted as Ex. 2 to her Opposition, and which relates to her termination.   *Id*.   She does not reference the two prior charges submitted by defendant, nor does she allege, *e.g.*, that Towson discriminated against her based on race when it denied her a promotion.   *See* ECF 15-2 (charge of discrimination alleging failure to promote).   And, to the extent that any of the allegations in plaintiff's Complaint overlap with allegations she may have included in a prior Charge of Discrimination, it appears these are included in order to support an inference of discrimination with respect to Cobb's termination.   *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (stating Title VII plaintiff may use prior alleged acts of discrimination that are not actionable because they are barred by Title VII's filing deadlines "as background evidence in support of a timely claim").

To be sure, if Cobb intends to seek relief in this suit for any adverse employment actions described in Charges of Discrimination *other than* the EEOC Charge relied on in her Complaint, *see* ECF 1 at 3 and Ex. 2 to plaintiff's Opposition, Towson is correct that the deadlines for filing suit under Title VII may bar relief.   Specifically, Title VII requires that a plaintiff commence a court action founded on a particular Charge of Discrimination within ninety days of receipt of a

letter from the EEOC stating that she has a right to file suit in court based on the allegations in that same Charge of Discrimination.  42 U.S.C. § 2000e-5; *Khan v. Jenkins*, 814 F.2d 655, at \*2 (4th Cir. 1987) (unpub.) (quoting *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1976)) ("When and if the EEOC issues the aggrieved a 'right to sue' letter, the party has ninety (90) days thereafter in which to file a claim. Failure to meet these filing deadlines renders the discriminatory occurrence 'merely an unfortunate event in history which has no present legal consequences.'"), *cert. denied*, 484 U.S. 1061 (1988).  However, at this stage, my consideration is limited to the allegations in plaintiff's Complaint, and any documents incorporated by reference and/or integral to the allegations in the Complaint.  As best I can tell, Towson's arguments for summary judgment pertain to claims that Cobb has not included in her Complaint.

In sum, I will grant Towson's motion to dismiss the Complaint, and I will deny Towson's request that I convert the motion to one for summary judgment.  Cobb has failed to state facts in her Complaint sufficient plausibly to show that Towson terminated her in retaliation for protected civil rights enforcement activity, and/or because of her race.  However, because Cobb may yet be able to remedy the defects in her Complaint, I will permit her to amend her Complaint.  She may reallege her termination claim with additional supporting factual allegations, such as those included in her Opposition.  Additionally, if Cobb intends to seek relief in this suit for additional adverse employment actions— that is, for more than her termination— she may also amend her Complaint to expressly state those claims and to include supporting factual allegations.  If Cobb chooses to file an Amended Complaint, she must do so within twenty-one days from the date of docketing of the Order accompanying this Memorandum Opinion.

**Conclusion**

For the foregoing reasons, I will grant the Motion (ECF 15), and dismiss the Complaint (ECF 1), without prejudice.  A separate Order follows, consistent with this Memorandum.


Date: June 10, 2015                                    _____/s/_____

                                           Ellen Lipton Hollander
                                           United States District Judge