IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DARCEL COBB,<br>   *Plaintiff,*<br><br>v.<br><br>TOWSON UNIVERSITY,<br>   *Defendant.* | Civil Action No.: ELH-14-02090 |

**MEMORANDUM**

Darcel Cobb, the self-represented plaintiff, filed a Complaint against her former employer, Towson University ("Towson"), defendant, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). ECF 1.[1] In particular, Ms. Cobb, who is African American (ECF 1 at 2 ¶ 6), alleges that Towson discriminated against her based on race; retaliated against her for filing a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"); and unlawfully terminated her employment. *Id.*

In response, Towson moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56. ECF 15. In her opposition to that motion (ECF 17), Cobb submitted 50 exhibits. By Memorandum Opinion (ECF 24) and Order (ECF 25) of June 10, 2015, I granted Towson's motion to dismiss the Complaint, but also granted Ms. Cobb leave to amend.

---

[1] In ECF 1, plaintiff claims she was terminated on June 29, 2010. But, in other submissions, plaintiff contends that she was terminated on other dates, including October 31, 2010 (ECF 30-2, Charge of Discrimination dated Nov. 17, 2010) and March 23, 2011. ECF 30 at 3, Amended Complaint.

Thereafter, Ms. Cobb filed an Amended Complaint (ECF 30), to which she appended twenty-four exhibits. ECF 30-1 to ECF 30-24. Ms. Cobb alleges that she suffered "race discrimination, retaliation and wrongful termination" while working at Towson, in violation of Title VII. ECF 30 at 1.[2] Among other things, plaintiff asserts that she "was treated different than Emiko Ortega [her] non-African American coworkers [sic] with the same job title Library Tech II," despite Ortega's poor performance. ECF 30 at 5; *see also id.* at 7-8. She also complains that she was placed on paid administrative leave on June 29, 2010, and wrongfully terminated on March 23, 2011. ECF 30 at 3. In addition, she claims that she "was falsely accused of poor job performance." *Id.*[3] Cobb seeks compensatory damages in the amount of $400,000.00. *Id.* at 12.

Towson has filed a motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 35), accompanied by a memorandum of law. ECF 35-1, "Memo" (collectively, the "Motion"). Towson maintains that "[a] reasonable person reading the factual allegations in [the] amended complaint . . . cannot make out a sequence of events that remotely suggests that Plaintiff is entitled to any form of relief" (ECF 35-1 at 7) and that Cobb "fails to state facts" to make her claims of discrimination and retaliation "sufficiently plausible" to survive a motion to

---

[2] Because the Amended Complaint (ECF 30) is the operative complaint, I shall refer only to the claims asserted in that pleading, although some were also contained in the initial Complaint.

The Amended Complaint states that Towson was a "hostile work environment." ECF 30 at 6. A plaintiff may bring "a Title VII claim that a workplace is racially hostile . . . ." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc). Here, Ms. Cobb does not expand on this allegation and did not include a hostile work environment claim in the EEOC charge that gave rise to this suit, discussed *infra*. *See* ECF 30-2, Charge of Discrimination. Accordingly, I construe the Amended Complaint (ECF 30) as stating claims for racial discrimination and retaliation under Title VII.

[3] At page 6 of ECF 30, plaintiff alleges that she was terminated on June 29, 2010.

dismiss. *Id.* at 11. Cobb opposes the Motion. ECF 37, "Opposition." Towson did not file a reply, and the time to do so has expired.

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion.

### I. Factual Background[4]

Ms. Cobb began working at Towson as a Library Technician on July 5, 1989. ECF 30-2 at 2, Charge of Discrimination. Effective July 24, 1995, Ms. Cobb was assigned to the Interlibrary Loan ("ILL") Department of Towson's Albert S. Cook Library. ECF 30-8 at 2, Letter to Cobb from G. Lonnie McNew, Associate Vice President, dated July 14, 1995. Ms. Cobb apparently worked in the ILL Department until Towson placed her on administrative leave on June 29, 2010, pending her dismissal. ECF 30-4 at 2, Letter to Cobb from Phillip Ross, III, Associate Vice President and Director, Human Resources, dated June 29, 2010.

Ms. Cobb alleges: "The race discrimination and retaliation began after my supervisor of 11 yrs. Sharon Mollock resigned on January 3, 2006." ECF 30 at 6, Amended Complaint. Ms. Cobb asserts that the she experienced "harassment" which "intensified" after Deborah Nolan, the University Librarian, began her employment with the University. *Id.*; *see also* ECF 30-14 at 2, Memo from Nolan to Mary Ranadive, Towson's Assistant University Librarian for Public

---

[4] In this section, I rely on the facts alleged in the Amended Complaint (ECF 30) and on the exhibits that plaintiff submitted with her Amended Complaint. ECF 30-1 to ECF 30-24. As discussed, *infra*, these exhibits may be properly considered in deciding a motion under Fed. R. Civ. P. 12(b)(6), to the extent that they are integral to the Complaint. Moreover, because plaintiff is self-represented, her Amended Complaint has been liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Services, and Linda Kleback, Towson's ILL Coordinator. Ms. Cobb asserts: "I was daily reprimanded by Ms. Nolan soon after her arrival to the university." ECF 30 at 6.

Ms. Cobb interviewed for the position of ILL Coordinator on May 14, 2007. ECF 30-24 at 2, Interview Schedule dated May 14, 2007. Yvonne Lev, an Associate University Librarian and a member of the search committee for the position, wrote to Cobb on May 31, 2007, stating, *id.* at 4: "After carefully considering several candidates, the search committee has decided to continue recruiting to fill the position of an Interlibrary Loan Coordinator." Ms. Cobb asserts, ECF 30 at 8-9: "I was the only library staff member with the knowledge, skills and experience of the vacant exempt Inter-Library Loan Coordinator position." Further, she alleges, *id.* at 9: "Linda Kleback a white female was hired with no knowledge or prior experience of the department or ILLiad database."[5]

On February 23, 2008, Ms. Cobb "filed a charge of discrimination against the University claiming that the University did not select her for a promotion due to her race." *Id.* Ms. Cobb and Towson participated in an "MCHR mediation hearing"[6] on April 9, 2008. *Id.* Ms. Cobb states: "Defendant was informed they [sic] violated University policies they [sic] were informed

---

[5] Under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Therefore, I shall take notice of the fact that the "ILLiad database" is software that facilitates ILL transactions. *See* ILLiad Features, Online Computer Library Center, http://www.oclc.org/illiad/features.en.html (last visited Nov. 19, 2015).

[6] "MCHR" presumably refers to the Maryland Commission on Human Relations. In 2011, the Commission changed its name to the Maryland Commission on Civil Rights. *See* About MCCR, Maryland Commission on Civil Rights, http://mccr.maryland.gov/AboutMCCR.html (last visited Dec. 1, 2015).

they had to pay me for temporary [sic] filling the vacant position." *Id.*[7] Then, "[o]n May 9, 2008 only a month after reaching a settlement, Plaintiff filed another Charge of Discrimination with the MCHR challenging her April 12, 2008 poor performance evaluation as retaliation." *Id.*

Ms. Cobb and Emiko Ortega, another library employee, had an altercation on June 12, 2008, concerning the processing of an ILL request. ECF 30-23 at 2, email from Kleback to Nolan and Ranadive dated June 13, 2008 (recounting the previous day's incident). In an email of June 13, 2008, Ms. Kleback wrote to Nolan and Ranadive: "Darcel is blowing up at Emiko on a regular basis, and it is affecting the department badly. Emiko can overreact on occasion, but in this case, she was trying to help patrons and handled herself appropriately." *Id.*

Ms. Cobb asserts: "My coworker Emiko Ortega false [sic] accused me of verbally assaulting her." ECF 30 at 7, Amended Complaint. At Ms. Cobb's request, Masaru Irie, a student worker at Cook Library, prepared a written statement concerning the incident between Ms. Cobb and Ms. Ortega. ECF 30-22 at 2, Irie Statement dated July 20, 2009; *see* ECF 30 at 7. Mr. Irie stated: "There was no such a thing [sic] like verbal assault made by Darcel. As far as I recall, it seemed to be Emiko's over-reacting." ECF 30-22 at 4. Ms. Cobb complains that she "was reprimanded despite the [favorable] statement of the only eyewitness." ECF 30 at 7.

According to Ms. Cobb, she was treated differently than Ms. Ortega on the basis of race. *See* ECF 30 at 8, Amended Complaint. Ms. Cobb asserts, *id.*:

> My non-African American co-worker Emiko Ortega also a Library Tech II and I was not treated the same). Her work sat for over two years as well as the daily

---

[7] According to Towson, the filing of the charge by Cobb on February 23, 2008, resulted in a Settlement Agreement between the parties dated April 9, 2008. *See* ECF 15-1 at 3; ECF 15-3 (Settlement Agreement). In Section 7 of the Settlement Agreement, Cobb released Towson from any claims that "were or might have been alleged as charges. . . ." ECF 15-3 ¶ 7; *see* ECF 15-1 at 3.

5

cancellation for library materials. I falsely [sic] accused of poor job performance without supportive documentation. Ortega's poor job performance was well documented and yet ignored. She was viewed and rated above standards job performance, providing excellent customer service, good attitude and could always be counted on, extremely knowledgeable, showing good judgment, efficiency, dependability, accuracy and productivity. Complaints about her cancellation for library materials were totally ignored. She was never discipline [sic] and is currently Defendant in the same department.[8] Examples Ortega's [sic] poor job performance her [sic] duties sitting for over two years with no activity. I was accused of having two consecutive performance evaluations.

On July 28, 2009, Ms. Cobb met with Ms. Nolan.  ECF 30-14 at 2, Memo to Cobb from Nolan dated July 28, 2009 ("This memorandum outlines the issues I raised with you during our meeting today . . . ."). In Nolan's Memorandum to Cobb concerning the meeting, Nolan outlined the substance of the meeting, stating, in part, *id.*:

> I stated that it has been brought to my attention that you have been observed wandering on the second floor of the library on a regular basis in the morning and without a work-related purpose.
>
> ***
>
> In addition, I stated that it has been brought to my attention that during some of your recent morning visits to the second floor of the library, you were observed behaving in a manner that appeared as though you were hiding behind book shelves and surreptitiously watching Linda Kleback.  Further, it has been reported to be me that you appeared to have taken unwarranted photographs of Linda Kleback.  I stated that this behavior is absolutely inappropriate.  It borders on workplace harassment and is unacceptable.

During Nolan's meeting with Cobb, Nolan completed an Employee Assistance Program ("EAP") Supervisory Referral Form, referring Cobb for mental health treatment. ECF 30-14 at 3; *see also id.* at 4-5, EAP Supervisory Referral Form.  The Memorandum states that Cobb did not want to sign the form without consulting an "attorney and union representative." *Id.* at 3.

---

[8] Ms. Cobb's Amended Complaint (ECF 30) names Towson as the sole defendant.

Ultimately, however, Cobb indicated on the EAP Supervisory Referral Form that she wanted to participate in the EAP; she signed the form on July 30, 2009. *Id.* at 5, EAP Supervisory Referral Form.

Ms. Cobb alleges, ECF 30 at 6: "I attended a September 1, 2009 meeting with same attendees of all previous departments, Deborah Nolan University Librarian, Mary Ranadive, Linda Kleback and Emiko Ortega and me being the only African American. I was informed by library staff from other departments, Debbie Nolan never attended their departmental meeting . . . ."

On September 3, 2009, Ms. Nolan sent a Memorandum to plaintiff, titled "Official Reprimand." ECF 30-19 at 2. The Memorandum outlined what transpired at the meeting on September 1, 2009, concerning an organizational change in the department. *Id.* It stated, in part: "Ms. Cobb, this memorandum serves as an official reprimand for the unacceptable behavior and insubordination that you displayed on September 1, 2009 toward the University Librarian." *Id.* Nolan wrote, among other things: "Your behavior and communication during this meeting were inappropriate and created a very uncomfortable environment for all those in the meeting. Your disrespectful behavior is unacceptable and is insubordination." *Id.* at 3. Plaintiff signed the Memorandum on September 9, 2009, but wrote that her signature did not indicate her agreement with the content. *Id.*

On September 16, 2009, Towson held an evidentiary hearing in connection with Cobb's reprimand. ECF 30-20, Memorandum to Cobb from Dr. Katherine Denniston, dated September 21, 2009. Dr. Denniston, the Associate Provost, reviewed the evidence presented at the hearing and concluded that plaintiff's conduct at the department meeting on September 1, 2009 was

"rude and insubordinate. . . ."  *Id.* at 3.  Nevertheless, she determined that a "Letter of Counseling is a more appropriate consequence . . . than a Letter of Reprimand."  *Id.*  Therefore, she reduced the reprimand to a Letter of Counseling.  *Id.*; *see also id.* at 4-5, Memo to Cobb from Nolan dated Oct. 20, 2009.

On October 5, 2009, Ms. Ranadive sent Ms. Cobb another Letter of Counseling.  ECF 30-15 at 2.  Ranadive "require[d] that [Cobb] enroll in the next available training class on the Human Resources list of Training and Development Courses specifically **Customer Service in Higher Education** . . . ."  *Id.* (bold text in original).  Ranadive explained, in part, *id.*:

> As discussed in our meeting held on October 2, 2009, an ILL customer made a complaint that their needs were not fully met when they visited the ILL office in late September.  The customer wanted to check on the status of a transaction in their account; and they felt that they did not receive a satisfactory answer to their request.

Ms. Cobb signed the memo on October 21, 2009, (ECF 30-15 at 2), with "attached comments of rebuttal."  *Id.*; *see also id.* at 3 (Rebuttal).  In her suit, Cobb asserts, ECF 30 at 5, Amended Complaint: "My request for details . . . as to why I was being disciplined was always denied."

In March 2010, Ranadive, who had taken a "direct supervisory role" for Cobb in September 2009 (ECF 30-10 at 3, Performance Evaluation), prepared a detailed performance evaluation for Cobb for the period April 1, 2009, through February 28, 2010.  ECF 30-10.  Ranadive rated Cobb's "Overall Performance Rating" as "Below Standards."  *Id.* at 2.  The evaluation described Cobb's "Customer Service" and "Cooperation and Teamwork" as "Unsatisfactory."  *Id.* at 3.  Ranadive also rated Cobb's "Quality of Performance" as "Below standards."  *Id.* at 5.  Ranadive said, in relevant part, *id.*:

> Darcel takes her position seriously and appears engaged in her work but does not follow the established workflow. She takes too much time on difficult or time consuming transactions; she allows new, unfilled and conditional transactions to accumulate. Linda Kleback (her former supervisor) and I have encouraged Darcel to enlist our help when the requests increase exponentially or to handle special problems, however Darcel does not avail herself of our assistance.
>
> There are other examples of Darcel's quality of performance, including documentation for an extremely overdue invoice for an ordered article, requests filled with material we subscribe to, and identical requests filled. These situations were brought to the attention of Darcel and her response at the time was "these things happen". There is also a lack of transparency on the details of transactions.

Ranadive's evaluation also characterized Cobb's "Attendance and Dependability" as "Below standards." *Id.* In particular, Ranadive said, *id.*:

> Darcel follows university and departmental policies and procedures for the notification and documentation of absences. However the fact that she was absent for a 74 day [sic] (approved combination of sick (36) and annual (30) as well as personal, holiday [sic] were used during the review period. This put a tremendous amount of pressure on ILL staff to handle Darcel's workload in addition to their own and to efficiently process materials/transactions in a timely fashion to serve our faculty, staff and students.

Cobb maintains that her performance evaluation did not "reflect[] an accurate evaluation of [her] overall job performance." ECF 30 at 4.

As noted, on June 29, 2010, Phillip Ross, III, the Director of Human Resources, informed Ms. Cobb in writing that she had been "placed on administrative leave pending removal from University service." ECF 30-4 at 2, Letter to Cobb from Ross dated June 29, 2010. Ross explained: "[T]his action is being imposed given your continued inefficiency in the performance of your duties as indicated by your second consecutive overall 'below standards' annual performance evaluation, and based on your lack of cooperation, willingness, and effort to perform your duties as required and expected." *Id.*

9

Cobb filed a Charge of Discrimination with the Maryland Commission on Human Relations on November 17, 2010, which was cross-filed with the EEOC. ECF 30-2 at 2. She claimed that Towson discriminated against her based on race and in retaliation for engaging in protected activity. *Id.* In the box on the form requesting dates of discrimination, Cobb wrote "6-25-2010" for the "Earliest" and "10-31-2010" for the "Latest." *Id.* Cobb also stated in the section requesting the "particulars," *id.*:

> I. I was hired by the above named employer on July 5, 1989 as a Library Technician. I have filed multiple charges of discrimination against my employer. On June 25, 2010, I was placed on paid administrative leave. In October 2010, I received notice of my employer's intent to discharge me.
>
> II. My employer stated I was placed on administrative leave and discharged because of alleged performance problems. A similarly situated non-Black, non-protesting employee (Emiko Ortega) has worse performance than I, but no adverse employment action was taken against her.
>
> III. I believe I was discriminated against with respect to administrative leave and discharge[d] because of my race (Black) and in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

In the Amended Complaint, plaintiff alleges that she was terminated on March 23, 2011. ECF 30 at 3. She asserts, *id.* at 3-4: "In May 2011, I was denied Unemployment Insurance after the Defendant provided false statements to the State of Maryland Department of Labor, Licensing and Regulation Division of Unemployment Insurance."

On March 27, 2014, the EEOC issued a right to sue letter to Ms. Cobb. ECF 30-3 at 2, EEOC Dismissal and Notice of Rights. It said, in part: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." *Id.* This suit followed on June 27, 2014. ECF 1.

## II.  Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint. *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted).  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly,* 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby,* ____ U.S. ____, 135 S.Ct. 346 (2014) (per curiam).  But, the rule demands more than bald accusations or mere speculation.  *Twombly,* 550 U.S. at 555; *see Painter's Mill Grille, LLC,* 716 F.3d at 350.  To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Iqbal,* 556 U.S. at 684; *Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 402 (2011). Nonetheless, the complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading. Ordinarily, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (recognized in *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) as abrogated on other grounds by *Reed v. Town of Gilbert, Ariz.*, ___ U.S. ___, 135 S. Ct. 2218 (2015)). However, a court may properly consider documents attached or incorporated into

the complaint, as well as documents attached to the defendant's motion, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### III.  Discussion

In its Rule 12(b)(6) Motion, Towson argues that the Amended Complaint fails to satisfy the minimum pleading requirements of Fed. R. Civ. P. 8(a) for claims of race discrimination and retaliation under Title VII. Towson submits, ECF 35-1 at 7, Memo:

> Even affording Plaintiff's amended complaint the most liberal construction, the alleged factual matter therein is not susceptible to any logical sequence or chronology. A reasonable person reading the factual allegations in [the] amended complaint – distilled from her bald conclusory statements – cannot make out a sequence of events that remotely suggests that Plaintiff is entitled to any form of relief. Therefore, the amended complaint, like the original, fails to meet the minimal standards under Rule 8(a) for pleading either retaliation or discrimination.

Towson maintains that the exhibits that plaintiff attached to her Amended Complaint (ECF 30-1 to ECF 30-24) "blatantly contradict Plaintiff's various allegations," and it asserts that, "[i]n vivid detail," these exhibits "chronicle the story of Plaintiff's long history of poor work performance and workplace disputes without implicating any racial animus by the University or its employees or any protected activity undertaken by Plaintiff." ECF 35-1 at 8, Memo. Towson contends: "Ultimately, the exhibits confirm Plaintiff's lawful termination by the University." *Id.*

But, the purpose of a motion to dismiss is to permit a defendant to argue that a complaint is defective—not for a defendant to advance a legally permissible justification for taking an adverse employment action.

In Ms. Cobb's Opposition, she argues, in relevant part, ECF 37 at 8:

> Plaintiff respectfully requests that this Court deny defendant's motion to dismiss the complaint. The Plaintiff has clearly presented evidence that she was in a protected class; qualified for the job performing it adequately; denied job benefit [sic] (not being hired and terminated); and the person who got the job benefit was of a different race.
>
> The Defendant failed to prove beyond a reasonable doubt that the Plaintiff committed transgressions of some established rule or policy or engaged in a course of wrong conduct within the range or extent of the Defendant's alleged accusations. The Defendant's action became unlawful when they [sic] failed to produce direct evidence of said accusations.

Towson recognizes in its Motion that "a *pro se* plaintiff's complaint need not establish with precision a *prima facie* case[] in order to survive a motion to dismiss . . . ." ECF 35-1 at 8, Memo. (citing *Miller v. Carolinas Healthcare Sys.*, 561 F. App'x 239 (4th Cir. 2014), *cert. denied*, ____ U.S.____, 135 S. Ct. 677 (2014)).[9]  Indeed, as a matter of law, an employment discrimination complaint need not advance a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). Rather, "to

---

[9] Towson cites to pages 6-7 of the Westlaw version of *Miller*, 561 F. App'x 239. ECF 35-1 at 8, Memo.  However, the Westlaw version of *Miller*, 561 F. App'x 239, does not contain pages 6-7.  I assume that Towson intended to cite to *Miller*, 561 F. App'x at 241 ("In the employment discrimination context, however, a plaintiff need not establish a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 510–11, 122 S.Ct. 992 (concluding that 'the prima facie case ... is an evidentiary standard, not a pleading requirement.').").

survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ____ U.S.____, 132 S.Ct. 1327 (2012) (citation omitted); *see also McCleary–Evans v. Md. Dep't of Transp.,* 780 F.3d 582, 585 (4th Cir. 2015).

To state a claim for discrimination under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190; *accord Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012). Ms. Cobb, who is African American (ECF 1 at 2 ¶ 6), was terminated by Towson. ECF 30 at 1, Amended Complaint. Ms. Cobb alleges that she satisfactorily performed her job as a library technician but, because of her race, she received unfairly negative performance evaluations relative to Ms. Ortega, a similarly situated non-African American library technician. *See id.* at 5, 7-8. Ms. Cobb submits that her negative performance evaluations led to her dismissal. *See* ECF 30-2 at 2, Charge of Discrimination.

To state a claim for retaliation under Title VII, a plaintiff must allege (1) "that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quotation marks and citation omitted) (stating requirements for a prima facie case). Cobb alleges that she filed employment

discrimination charges against Towson, including charges in February 2008 and May 2008.[10] ECF 30 at 9, Amended Complaint. Cobb also alleges that she was terminated in retaliation for having filed employment discrimination charges against Towson. *See id*.

In her EEOC charge of November 17, 2010, Ms. Cobb maintained: "I was discriminated against with respect to . . . discharge because of my race (Black) and in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 . . . ." ECF 30-2 at 2. Ms. Cobb's EEOC charge also stated: "I have filed multiple charges of discrimination against my employer." *Id.* In addition, Ms. Cobb alleged in her EEOC charge of November 17, 2010, that, relative to "[a] similarly situated non-Black, non-protesting employee," who "has worse performance," Ms. Cobb received unfairly negative performance evaluations because of racial animus and out of retaliation for having filed previous employment discrimination complaints against Towson. ECF 30-2 at 2, Charge of Discrimination. Ms. Cobb also included in her Complaint that she previously filed charges of employment discrimination in February 2008 and May 2008. *See* ECF 30 at 9. And, she maintains that "alleged performance problems" precipitated her discharge. *Id.*; *see* ECF 30-4 at 2, Letter to Cobb from Ross dated June 29, 2010 ("[T]his action is being imposed given your continued inefficiency in the performance of your

---

[10] Towson maintains: "Plaintiff attempts to rebut the University's claim that she lacked allegations of a protected activity under Title VII, and contends that her November 17, 2010 EEOC charge – filed *after* she was terminated on June 29, 2010 – constitutes her protected activity. (Doc. 30 at 2-3)." ECF 35-1 at 3, Memo (emphasis in original). The text of Cobb's Amended Complaint does not appear to support Towson's contention that the factual basis for Cobb's retaliation claim is the EEOC charge that gave rise to this suit. Cobb's Amended Complaint says, in relevant part, ECF 30 at 2-3: "My November 17, 2010 charge (See [ECF 30-2]) of retaliation and discrimination with EEOC resulted in a Dismissal and Notice of Right on March 27, 2014 (See [ECF 30-3]). On June 28, 2014 I filed a lawsuit with the Maryland United States District Court within the 90 day requirement." Rather than advance a factual basis for her retaliation claim, in this section of the Amended Complaint it appears that Cobb simply attempted to provide a procedural history of her EEOC charge and subsequent suit.

duties as indicated by your second consecutive overall 'below standards' annual performance evaluation . . . ").

A plaintiff may only bring suit pursuant to claims that were raised in the EEOC charge. *See* 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). A court cannot consider matters that were not properly raised during the EEOC process. *See*, *e.g.*, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (emphasis added); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation."). Nevertheless, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 595 (4th Cir. 2012).

However, a plaintiff may introduce background evidence of prior acts not contained in an EEOC charge, as evidence for claims that are properly before the court. With regard to Title VII, the Supreme Court has explained, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)[11]:

> The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Ms. Cobb's Amended Complaint contains factual allegations of a discriminatory course of conduct that began as early as 2006. *See* ECF 30 at 6. The basis of Ms. Cobb's suit, however, is limited to claims that she raised in her EEOC charge of November 17, 2010—namely "discharge because of my race (Black) and in retaliation for engaging in protected activity. . . ." ECF 30-2 at 2. But, Ms. Cobb is entitled to refer to "prior acts as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113, in order to contextualize her claims for wrongful termination based on race and in retaliation for engaging in protected activity.

Cobb, who is self-represented, has not submitted an Amended Complaint with the polish that the Court expects from an attorney. But, the Amended Complaint satisfies the minimum pleading standards as required by Fed. R. Civ. P. 8(a)(2). Under Rule 8(a)(2), as discussed, a complaint need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, but only "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Id.* at 556. This is true "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote

---

[11] Some courts have said that *Morgan*, 536 U.S. 101, has been superseded, in part, by the Lilly Ledbetter Fair Pay Act, Pub. L. No. 111–2, 123 Stat. 5 (2009). *See, e.g., Saunders v. Queensborough Cmty. Coll.*, No. 13 CV 5617 PKC RML, 2015 WL 5655719, at *4 (E.D.N.Y. Sept. 24, 2015).

and unlikely." *Id.* Construing Ms. Cobb's submissions liberally, as I must, *Erickson*, 551 U.S. at 94, she has "state[d] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## Conclusion

In my view, Ms. Cobb's Amended Complaint states claims for discrimination and retaliation under Title VII. She has alleged facts sufficient to "nudge" her discrimination claims "from conceivable to plausible . . . .'" *Twombly,* 550 U.S. at 570.

For the foregoing reasons, I will deny Towson's Motion to Dismiss. A separate Order follows, consistent with this Memorandum.


Date: December 3, 2015              /s/
                                    Ellen Lipton Hollander
                                    United States District Judge