IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARCEL COBB                                    *

        Plaintiff,                           *

   v.                                           *      CIVIL NO.:  ADC-14-2090

TOWSON UNIVERSITY                              *

        Defendant.                           *

*      *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM OPINION

### Introduction

The Plaintiff has filed an Amended Complaint alleging that she suffered race discrimination, retaliation, and wrongful termination in her employment with Towson University. In her response to the Motion for Summary Judgment, Plaintiff abandoned her retaliation claim. Plaintiff who is African-American claims that she was treated differently than a non-minority co-worker who held the same position, a Library Tech II. Plaintiff's evidence consists of her opinions and her evaluation of both her performance and her opinions of the performance of the comparator she offers.

Plaintiff administratively appealed her performance evaluations from 2007, 2009 and 2010. Subsequently she appealed her 2009 and 2010 evaluations to the Office of Administrative Hearings for the State of Maryland. After being denied relief during the Administrative proceedings, Plaintiff appealed the decisions to the Circuit Court for Baltimore County, who again denied Plaintiff relief, finding that the Administrative Hearing Officer applied the correct legal standard and her decision was not arbitrary or capricious. The Court of Special Appeals

1

reviewed the administrative agency's decision dismissing the Plaintiff's grievance and affirmed the decision. Interestingly, Plaintiff did not assert discrimination as a basis for her grievances before the administrative agency.

Plaintiff filed her first charge of discrimination on February 27, 2008 alleging that she was discriminated against because she was not selected for a promotion and a Caucasian woman who she believed lacked the job skills was selected. Plaintiff and Towson University resolved this dispute by a settlement agreement dated April 9, 2008, which provided Plaintiff back-pay as an acting ILL coordinator during the interim selection period and accorded some other concessions to Plaintiff. There was no admission of discriminatory conduct. Plaintiff then filed a complaint alleging retaliation and violation of her settlement agreement. The Maryland Commission on Human Relations dismissed the complaint finding no retaliation. Plaintiff did not complain of any discriminatory conduct related to her performance evaluations prior to this Complaint.

**Facts**

Plaintiff began her employment at Towson University on July 5, 1989. She transferred from the Registrar's Office to the Interlibrary Loan Department ("ILL") in June 1995. She was employed as a Library Technician II. Sharon Mollock was her supervisor until January 2006. In her deposition, Plaintiff stated that during that time, she had excellent evaluations and her supervisors commended her. Under a temporary supervisor until June 2007, Plaintiff was rated as "meets standards".

Plaintiff's employment troubles began after Plaintiff applied for the ILL Coordinator position in April, 2007 and was not selected. Plaintiff testified that she had been serving as acting ILL Coordinator and was the best candidate for the position. She further alleged that a member

of the hiring committee, Sylvia Kodis, agreed. The University selected another candidate, Linda

Kleback, who was Caucasian. Ms. Kleback served in that position as Plaintiff's supervisor from

January 2008 through February 2010.  During that time, Mary Ranadive became Plaintiff's

second line supervisor and Deborah Nolan the University Librarian, became Plaintiff's third line

supervisor[1].

Ms. Kleback provided Plaintiff with her 2008 and 2009 performance reviews. Plaintiff

received a rating of 3 ("Meets Standards")  for 2008 and a rating of 1.9 ("Below Standards") for

2009. In her response in opposition to summary judgment, Plaintiff stated "[t]he reviews lacked

specific details and documentary proof to most of the alleged performance problems and

Kleback and Nolan cannot recollect any specific details. Pl. Response at 4. In actuality, the

reviews included detailed descriptions of Plaintiff's performance and issues related to Plaintiff's

performance. Pl. Response, Exh, 9, 10. For example,  "Darcel...can come across as hesitant.

Training on multitasking should be helpful...needs to be more willing to share information and

respond to supervisors...her attitude is perceived by library staff in other libraries as unhelpful

and that causes hard feelings on both sides." Exh. 9. The 2008 evaluation also recognized the

changes coming to the ILL department and stated that the Plaintiff's dedication should help her

give any changes a fair trial. Id.

Likewise, the 2009 evaluation specifically noted problems with Plaintiff's performance.

Exh. 10. "Darcel has good customer service skills but needs to use them in dealing with all

customers... In August, 2008 she was given a workflow plan that was not followed. She received

a letter of counseling in October 2008...[n]othing has changed. Darcel's job performance in this

area is unacceptable.... we have discussed job performance and improvements needed.  I have

given her written workflow plans that have not been followed. She has agreed to bring problems

---

[1]  These facts are culled from Plaintiff's Response and Exhibits 1-8.

in ILL to me, she has not...she has agreed to click on emails I send her so I know she's read them, she has not. In a meeting on 19 February 2009 on important software upgrades, she refused to look at me, barely responded to the questions I asked and took no notes...she shares nothing with me, and it is damaging the department. Darcel works hard but accuracy is a problem. There have been documented instances of articles in PDF form being handled incorrectly. Requests sent linger for months...the Letter of Counseling ...required the use of the Notes field ...this has not been followed. She has agreed to share information with me...this has not happened. She has not brought any ILL problems to me as required in the October 2008 Letter of Counseling. She keeps these to herself to the detriment of the department." Exh. 10.

Linda Kleback testified about being stalked by the Plaintiff. (ECF 78-9, pp. 12-14). "Every time that I can remember that I used the microfilm she would show up and walk around to see what I was doing." Id. Ms. Kleback testified that she used the word "stalking" to describe this conduct and understood what "stalking" meant. She also testified that she did not want to talk to Plaintiff any more than she had to. She did not counsel Plaintiff because she was too afraid. During that "stalking" period, Plaintiff was not fulfilling her job duties very well and was not meeting the standards that she was expected to fill. On one occasion, Plaintiff was seen hiding in the stacks and according to Ms. Kleback, took a flash picture of Ms. Kleback. Ms. Kleback saw the flash and thought she had been shot. She was too scared to confront Plaintiff. Id. at 13-16.

### Discussion

#### Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50.

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. Ltd. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324.

In evaluating a motion for summary judgment, the Court must "view the facts in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255; *see also United States v.*

*Diebold, Inc.,* 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn

from the underlying facts contained in such materials must be viewed in the light most favorable

to the party opposing the motion"). At the same time, the court also must abide by the

"affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526

(4th. Cir. 2003) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### The McDonnell Douglas Test

Plaintiff does not allege any acts of direct discrimination. In order to prove a prima facie

case of discrimination by circumstantial evidence Plaintiff must prove that (1) she is a member

of a protected class (2) she was performing at a level that met her employer's legitimate

expectations at the time of the adverse employment action (3) she suffered an adverse

employment action, and (4) the position remained open or was filled by similarly qualified

employees outside her protected class.

"The complainant in a Title VII trial must carry the initial burden under the statute of

establishing a prima facie case of racial discrimination. This may be done by showing (i) that he

belongs to a racial minority; (ii) that he applied and was qualified for a job for which the

employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv)

that, after his rejection, the position remained open and the employer continued to seek

applicants from persons of complainant's qualifications.  The burden then must shift to the

employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973).

In her Amended Complaint, Plaintiff alleges that she suffered "race discrimination,

retaliation and wrongful termination" while working at Towson, in violation of Title VII. ECF 30

at 1.  Among other things, plaintiff asserts that she "was treated different than Emiko Ortega [her] non-African American coworkers [sic] with the same job title Library Tech II," despite Ortega's poor performance[2]. ECF 30 at 5; see also id. at 7-8. She also complains that she was placed on paid administrative leave on June 29, 2010, and wrongfully terminated on March 23, 2011. ECF 30 at 3. In addition, she claims that she "was falsely accused of poor job performance." Id. at 3. Plaintiff has abandoned her retaliation claim.

In a disparate treatment claim, the rationale of the *McDonnell Douglas* approach is that, if a plaintiff proves a prima facie case, and the defendant submits no evidence of any legitimate basis for its actions, the court or fact finder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 579–80, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Under the *McDonnell Douglas* approach, if a plaintiff establishes at trial, by a preponderance of the evidence, a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 336 (4th Cir.2011).

"If the defendant carries this burden of production, the presumption raised by the  prima facie case is rebutted." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant" and "simply drops out of the picture." *St.*

---

[2]  Plaintiff in her Response refers somewhat loosely to a theory that after she was terminated she was replaced by a Caucasian hire. That theory is somewhat nonsensical since she complains of wrongful termination based upon race. The hiring would not have occurred but for her termination. The Court will not consider this theory which is unsupported by any statistical or other evidence.

*Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 510–11 (1993). When the defendant meets its burden

of production, the plaintiff must then prove, by a preponderance of the evidence, "that the

proffered reason was not the true reason for the employment decision," and that the plaintiff "has

been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256.. *See also Adams v. Trs.*

*of Univ. of N.C.-Wilmington,* 640 F.3d 550, 560 (4th Cir.2011) ("[I]n demonstrating the

Defendants' decision was pretext, [Plaintiff] had to prove 'both that the reason was false, and that

discrimination was the real reason.' ") (*quoting Jiminez v. Mary Washington Coll.,* 57 F.3d 369,

378 (4th Cir.1995)) (emphasis in original).

On the other hand, if the defendant fails to meet the burden of producing "evidence

which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for

the adverse action," and the plaintiff has proved a prima facie case, "the court must award

judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct.

2742 (emphasis in original). This is because a legal presumption of intentional discrimination has

been established. *Id.* at 510 n. 3, 113 S.Ct. 2742. *See Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct.

1089 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a

prima facie case is intended progressively to sharpen the inquiry into the elusive factual question

of intentional discrimination.").

In a case such as this one, involving alleged racially discriminatory discipline, the Fourth

Circuit has formulated the prima facie case as follows: "[The] plaintiff must show '(1) that

plaintiff engaged in prohibited conduct similar to that of a person of another race ... and (2) that

disciplinary measures enforced against the plaintiff were more severe than those enforced against

the other person.' " *Lightner v. City of Wilmington, N.C.,* 545 F.3d  260, 264–65 (Fourth Cir.

2008).

### The Disparate Treatment Claim

Plaintiff alleges that she was treated differently because of her race, than a co-worker who she believes was similarly situated. Plaintiff alleges she was disciplined, including receipt of poor performance ratings and two Letters of Counseling, and ultimately termination and those actions were race-based. The only evidence Plaintiff offers regarding the co-worker, Ms. Ortega is that she believed Ms. Ortega performed more poorly than her. Pl. Response at 29-31. The bullets set forth at pages 29-31 offer no material facts that support a claim of disparate treatment and represent only the conclusions of Plaintiff's beliefs. Even if the Court accepts those facts, Plaintiff is not a similarly situated individual. First, Ms. Ortega's conduct was not as egregious as Plaintiff's conduct. Secondly, when confronted by her supervisors, Ms. Ortega corrected her issues and even apologized for inappropriate conduct. In other words, Ms. Ortega responded to supervision. Plaintiff did not. Plaintiff engaged in a course of increasingly unmanageable conduct over a course of years which adversely affected the mission of ILL.

Plaintiff had specific performance issues that were addressed in her annual reviews and with Letters of Counseling. Plaintiff was given more than ample opportunity and assistance to remedy those issues and responded instead by not looking at or speaking to her supervisor, not acknowledging the emails from her supervisor, stalking her supervisor and engaging in a course of conduct that her supervisors found to be intimidating. Plaintiff has failed to meet her burden of proof of disparate treatment. There is no evidence in any of the documents Plaintiff relies upon that would indicate that the employer was doing anything other than attempting to remedy problems initiated by Plaintiff.

Judge Hollander of this Court recently decided a similar issue with respect to a disparate treatment claim:

"In a case such as this one, involving alleged racially discriminatory discipline, the Fourth Circuit has formulated the prima facie case as follows: "[The] plaintiff must show '(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race ... and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person,' (citations omitted) . Plaintiff has failed to produce evidence that could establish a prima facie case. In his affidavit, plaintiff asserts that "[t]wo white officers," whom plaintiff identifies by name, were "temporarily demoted," rather than permanently demoted, for misconduct that plaintiff contends was similar to his. One officer was a lieutenant who plaintiff asserts had a "comparable" disciplinary record to plaintiff's and was demoted to pump operator for "missing a call for service because his truck and crew ... was far outside of his district ... on a non-Fire Department matter." Similarly, plaintiff claims that a captain with a comparable disciplinary record was temporarily demoted to lieutenant for six months because he "neglected his duties with respect to the supervision of his fire station and its employees."
However, plaintiff advances no evidence concerning these two alleged comparators other than his own assertions, quoted above. Plaintiff's affidavit does not indicate that he has firsthand knowledge of the circumstances of either comparator's alleged temporary demotion, so as to be able to testify competently on a non-hearsay basis as to the infractions committed by either officer or the discipline imposed on them. Moreover, although discovery in this case has now concluded, plaintiff presents no documentary evidence from BCFD records to corroborate his characterization of the discipline imposed on his comparators, the nature of their infractions, or their prior disciplinary history. Plaintiff's bare assertions, without foundation, are insufficient to generate a dispute of material fact. An "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). With respect to his allegations about his comparators, plaintiff's affidavit fails that test and therefore cannot withstand defendants' summary judgment motion".

*Weathersbee v. Baltimore City Fire Department, et al.,* 970 F.Supp 2d 418, 432 (2013).

The Plaintiff offers no evidence other than her own perceptions of her performance and Plaintiff's perceptions of the performance of her comparator. "With respect to opinion testimony, we have repeatedly explained that it is the perception of the decision maker which is relevant, not the self-assessment of the Plaintiff. The Plaintiff's perception...is not relevant. Similarly, that Plaintiff's co-workers may have thought that she did a good job or that she did not deserve to be discharged is close to irrelevant. *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298-99 (4th Cir. 1998). To the extent that Plaintiff does offer any opinion evidence, it like in *DeJarnette,* failed to provide as a reasonable probability that Plaintiff's evaluations were either false or pretextual

for discrimination. *Id.* at 299.  The employee must present evidence reasonably calling into question the honesty of his employer's belief, employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination. *DeJarnette* at 299, citing, *Gionnopolous v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 411 (7th Cir. 1997).

"Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jimenez v. Mary Washington College,* 57 F3d 369, 377(4th Cir.  ). Particularly, this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment  discrimination..." *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997) (quotations and citations omitted). *See also, EEOC v. Clay Printing Co.,* 955 F.2d 936, 946 (4th Cir.1992). Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination. *Giannopoulos,* at 410–11.

Clearly from the evidence presented, Plaintiff has failed to prove a prima facie case of discrimination. Assuming arguendo that Plaintiff has proven a prima facie case under the *McDonnell Douglas* test, her claims still will not survive summary judgment. She has failed to prove that the well documented, consistent complaints about her performance, her lack of communication skills, lack of response to supervision, spanning years as well as multiple supervisors, were false or in any way pretextual for a discriminatory motive. If anything at all is obviously lacking from the facts in this case it is simply any evidence of a discriminatory motive on the part of Towson University.

11

In her Response, Plaintiff alleges that she met the expectations of her position as a Tech II. She relied upon comments over the years from various customers and also relied upon selected comments from her performance ratings. Pl. Response, pp. 31- 35. Plaintiff also alleges that Towson University varied from its normal business practices because Ms. Nolan, her third line supervisor reviewed her performance ratings and had input into the evaluation process. Based upon the evidence in this case, I find both arguments unpersuasive and not supported by the facts. Ms. Nolan testified that she read employee evaluations and made recommendations to the direct supervisors as part of her job (ECF 99-2 p. 3) Also, while Plaintiff did in fact receive favorable comments on her evaluations, she ignores the consistent issue of not communicating with her co-workers and supervisors and her deteriorating performance. It appears that Plaintiff may have worked well at times with the public (ILL consumers) but not well at all with her employer. Rather than attempting to terminate her, Towson University tried different means of correcting her behavior in the workplace. For example, she received four Letters of Counseling. Plaintiff was referred to the Employee Assistance Program after the stalking incident. Plaintiff was given direct orders on how to accomplish her job and despite these offers of assistance she refused to comply.

While obviously not binding on this Court, I find Judge Hollander's well-reasoned comments not only applicable but persuasive in deciding the present case:

"Regardless of the inadequacy of plaintiff's prima facie case with respect to comparator evidence, even if I were to assume, for the sake of argument, that plaintiff had established a prima facie case, his claims still could not survive summary judgment. At the second stage of the *McDonnell Douglas* analysis, plaintiff has provided no basis to suggest that his well-documented performance derelictions, including failing on several occasions to respond to the scene of an emergency in progress, were not legitimate, nondiscriminatory bases for discipline. They plainly were.

In any event, once the defendant employer has proffered evidence of a legitimate, nondiscriminatory basis for its adverse employment action, the *McDonnell Douglas* analysis

12

enters its third stage, at which the burden of production shifts back to the plaintiff to put forth evidence that, if believed, could convince a finder of fact that the employer's purported reasons were pretextual, and that the actual basis for its employment decision was the plaintiff's race. Put another way, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, supra,* 477 U.S. at 251–52, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

*Weathersbee,* at 433-34.

In the present case, under the burden shifting method, assuming Plaintiff could prove a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for the discipline. Towson University has clearly done so. Each and every adverse action was a response to the conduct exhibited by Plaintiff in the workplace. Towson University's disciplinary measures were progressive and well documented regarding Plaintiff's ongoing employment issues. The burden shifts back to Plaintiff to prove that the non-discriminatory reason is pretext for racial discrimination. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 n. 2 (4th Cir. 1989); *Jiminez, supra.* Plaintiff has clearly failed to do so.

What becomes obvious in this case is that Plaintiff was passed over for the ILL Coordinator position. Subsequently, although she had some past performance problems, her relationships with her supervisors then began to deteriorate. It was not just one supervisor, but all of Plaintiff's supervision. She became uncommunicative, unresponsive and unmanageable. According to Towson University, Plaintiff's conduct adversely affected the mission of the ILL program. Whether this was from being an experienced employee who believed she was more knowledgeable than any other candidate for the ILL Coordinator,  but was not promoted, or for some other reason. Plaintiff began her own campaign of rebellion that resulted in appropriate disciplinary efforts and ultimately provided a non-racial basis for her termination.

13

Defendant also in its motion sets forth a defense of issue preclusion. (ECF 99 at pp. 11-15). While that argument has some merit since the issues of discipline and termination were addressed by the administrative agencies, on several occasion in an adjudicatory posture and both the Circuit Court for Baltimore County and the Court of Special Appeals. However, the cases and allegations were fragmented over the time period of Plaintiff's employment. Not all of Plaintiff's claims raised below were race-based. Whether she has waived the right to raise a race-based claim of unlawful termination now is another issue. For purposes of this motion, the Court is assuming arguendo Plaintiff may raise these issues in this forum and there is no need to reach a decision based upon issue preclusion. The Court has addressed the motion on the merits.

I find as a matter of law that Plaintiff's claim cannot survive summary judgment because she has failed to meet her burden to prove a prima facie case of racial discrimination. Even if she had met her burden to prove a prima facie case, she has failed to produce evidence that the reasons for discipline and termination as presented by Defendant were pretextual for discrimination and that the real reason for her termination was based upon race. As stated above, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, supra,* 477 U.S. at 251–52. There being no sufficient disagreement to require submission to a jury, Defendant is entitled to judgment as a matter of law.

**Conclusion**

For the reasons stated above, Defendant 's Motion for Summary Judgment (ECF 76) will

be granted .  A separate Order will issue.

_2 March 2017_
Date

A. David Copperthite
United States Magistrate Judge